IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DELORAY C. CHRISTIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-18-00699-JD |
| | ) | |
| B.J. THOMPSON, SHIRLEY MAY, and | ) | |
| OKLAHOMA DEPARTMENT OF | ) | |
| CORRECTIONS, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This matter is before the Court for review of the Report and Recommendation ("R. & R.") [Doc. No. 74] issued by United States Magistrate Judge Suzanne Mitchell pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). Judge Mitchell recommends the Court grant Defendants B.J. Thompson and Shirley May's Motion for Summary Judgment [Doc. No. 65]. Plaintiff Deloray C. Christian timely objected ("Objections") [Doc. No. 75], triggering de novo review of the objected-to portions of the R. & R. Upon de novo review of the issues presented, and for the reasons stated below, the Court accepts the R. & R. and grants Defendants' Motion for Summary Judgment, resulting in a dismissal without prejudice of the sole remaining claim.

## I.    PROCEDURAL BACKGROUND

### A.    Initiation of the Action

Mr. Christian, a state prisoner proceeding pro se, filed this action under 42 U.S.C. §§ 1983 and 1985, alleging violations of his constitutional rights under the Sixth, Eighth,

and Fourteenth Amendments, as well as a conspiracy to deprive him of those rights. Mr. Christian's Amended Complaint ("Am. Compl.") [Doc. No. 11] is the operative pleading in this matter. His claims arose from events that transpired while he was incarcerated at North Fork Correctional Facility ("NFCF"), which at the time was an Oklahoma Department of Corrections ("ODOC") facility in Sayre, Oklahoma.[1] The moving defendants are a medical doctor, B.J. Thompson, and registered nurse and NFCF's health services administrator ("CHSA"),[2] Shirley May, both of whom treated Mr. Christian at NFCF and allegedly acted with deliberate indifference to his serious medical needs.

The Amended Complaint purported to assert three claims, only one of which remains. In his first claim, Mr. Christian alleged that Thompson and May conspired with Buddy Honaker, ODOC's medical services administrator, to violate his civil rights by fabricating a grievance process separate from the ODOC's grievance system afforded to other inmates in an effort to deprive Christian of due process, equal protection, and equal access. Am. Compl. ¶¶ 3(a), 3(b), 15. In his second claim, he alleged that the ODOC, Thompson, and May were deliberately indifferent to his serious medical needs by failing to facilitate a hip and right total knee arthroplasty and tertiary foot care and by failing to accommodate his disability with mobility aids. *Id.* ¶¶ 8–12, 14, 18–22. In his third claim, Mr. Christian alleged that Defendant John Does 1–30, employees of either ODOC or

---

[1] NFCF has since closed. According to ODOC's Offender Lookup, Mr. Christian is currently incarcerated at James Crabtree Correctional Center in Helena, Oklahoma.

[2] CHSA stands for "the facility correctional health services administrator." [Doc. No. 31-9 at 9].

NFCF, violated his "due process rights during the events leading up to and during [his] medical treatment and grievance process." *Id.* ¶ 23.

### B.    Motion to Dismiss Proceedings

ODOC, Thompson, and May moved to dismiss the Amended Complaint. [Doc. No. 33]. United States District Judge Charles Goodwin, to whom this case was originally assigned, granted in part and denied in part the motion to dismiss. [Doc. No. 48]. Liberally construing the Amended Complaint, Judge Goodwin determined that it stated two claims:

> [Mr. Christian] asserts claims under 42 U.S.C. §§ 1983 and 1985, alleging that Defendants violated his constitutional rights under the Eighth, Sixth, and Fourteenth Amendments to the United States Constitution by: (1) denying him necessary medical care—specifically, a hip and knee arthroplasty, tertiary treatment, rehabilitation therapy, and appropriate accommodations; and (2) failing to properly administer the grievance procedure established by ODOC.

*Id.* at 1.[3] Judge Goodwin dismissed without prejudice Mr. Christian's claims against the ODOC and his official capacity claims lodged against Thompson and May, based on Eleventh Amendment sovereign immunity. *Id.* at 2–4, 13. Before considering Mr. Christian's individual capacity claims, Judge Goodwin identified two affirmative defenses raised by Thompson and May: (1) that Mr. Christian failed to exhaust his administrative remedies; and (2) they were entitled to qualified immunity. *Id.* at 5–8.

Judge Goodwin did not consider Defendants' affirmative defense of non-exhaustion, concluding that this case was "not one of the rare instances where the Court

---

[3] The Court uses CM/ECF page numbering from the top of the district court docket filing in this Order.

can conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies . . . .'" *Id.* at 6–7 (quoting *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)).[4] Additionally, Judge Goodwin rejected Thompson and May's affirmative defense of qualified immunity because it was based exclusively on evidence outside the pleadings, which the Court could not consider on a Federal Rule of Civil Procedure 12(b)(6) motion. [Doc. No. 48 at 7–8].

Judge Goodwin determined that Mr. Christian failed to state a plausible claim that Thompson and May conspired to deprive him of his rights and dismissed the § 1985 conspiracy claim without prejudice under Rule 12(b)(6). *Id.* at 9, 13. Judge Goodwin also dismissed, without prejudice under Rule 12(b)(6), Christian's Sixth and Fourteenth Amendment claims regarding the processing of his administrative grievances, concluding that there is no constitutional right to a state administrative grievance process. *Id.* at 10, 13. Further, Judge Goodwin dismissed without prejudice Mr. Christian's claim against the unidentified Defendant John Does 1–30. *Id.* at 11, 13.

However, Judge Goodwin allowed Christian's § 1983 claim alleging deliberate indifference in violation of the Eighth Amendment to proceed against Thompson and May in their individual capacities. *Id.* at 13. This is the only claim that remains.

---

[4] Judge Goodwin had previously advised Defendants that "a dispositive motion based on the affirmative defense of failure to exhaust administrative remedies is typically considered a motion for summary judgment." *See* [Doc. No. 48 at 6] (quoting Order [Doc. No. 14 at 3 n.1]). He had expressly instructed Defendants that if they wished to obtain judgment on this basis, they would need to seek leave to file a motion for summary judgment based solely on the lack of exhaustion, but Defendants did not seek leave or otherwise request summary judgment. *See id.* Accordingly, Judge Goodwin concluded that dismissal on that basis was not warranted.

### C.    Mr. Christian's Alleged Facts Regarding Deliberate Indifference

Mr. Christian alleges that he was seen by Dr. Richard Griesman, a surgeon at Lindsay Municipal Hospital, in September 2017. Am. Compl. ¶ 7. Dr. Griesman examined Mr. Christian, who had a prior right total hip arthroplasty. *Id.* After informed consent, Dr. Griesman administered injections of lidocaine and betamethasone with Betadine prep and local anesthesia. *Id.* A four-week follow-up was recommended. *Id.*

In October 2017, Dr. Griesman conducted a follow-up for Mr. Christian's right knee pain. *Id.* ¶ 8. Mr. Christian reported that the prior injection provided no relief and that he remained uncomfortable with significant difficulty mobilizing. *Id.* Mr. Christian alleges that, following the examination, Dr. Griesman advised Thompson and May that Mr. Christian would benefit from evaluation at a tertiary care center to consider takedown of the hip arthrodesis and possible hip arthroplasty. *Id.*

Mr. Christian alleges that upon returning to NFCF, he asked May to schedule an appointment with Thompson to arrange an outside surgery as prescribed by Dr. Griesman. *Id.* He alleges that Thompson and May failed to schedule an outside medical appointment for the hip, knee, and foot surgeries that Dr. Griesman had prescribed.[5] Am.

---

[5] From the Court's review of the medical records, Mr. Christian was seen by Dr. Griesman on September 5, 2017, and October 3, 2017. *See* [Doc. No. 32-2 at 10–11]. While Dr. Griesman indicated Mr. Christian would benefit from being seen by a tertiary type institution to consider takedown of Mr. Christian's arthrodesis with hip arthroplasty, he does not make a referral in those records. *Id.* at 11. He states he would like to see Mr. Christian "back as needed." *Id.* The grievances concerning the cancellation of the OU Medical Center appointment surround a December 2015 appointment. In any event, it is not the Court's responsibility to comb through the record in order to make Mr. Christian's arguments for him, nor does Mr. Christian assert in his Objections that additional grievances are at issue outside what Judge Mitchell considered in her R. & R. *See*

Compl. ¶ 14. As a result, Mr. Christian contends that May and Thompson were deliberately indifferent by disregarding Dr. Griesman's prescribed medical plan, failing to provide adequate tertiary care, rehabilitation, handicap-accessible housing, and necessary accommodations for his left lower extremity and right knee during incarceration. *Id.* ¶¶ 9–13.

### D.    Thompson and May's Motion for Summary Judgment

Thompson and May contend that they are entitled to summary judgment on Mr. Christian's remaining claim because Mr. Christian failed to exhaust his administrative remedies under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). [Doc. No. 65 at 15–19]. Alternatively, they argue that Mr. Christian's claim fails because he cannot satisfy the subjective component of a deliberate indifference claim. *Id.* at 19–23. Conversely, Thompson and May contend they are entitled to qualified immunity because Mr. Christian cannot show that his constitutional rights were violated by them or that they violated a right clearly established by law. *Id.* at 23–25. Thompson and May concede that Mr. Christian "filed several grievances," but they contend that "he either did not successfully complete the grievance process or failed to grieve the specific claims that he alleged in his Amended Complaint." *Id.* at 17.

---

*Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) (explaining it is not the district court's obligation "to comb the record in order to make [the plaintiff's] arguments for him"). It does appear that Mr. Christian was seen at the tertiary clinic at OU Medical Center on March 12, 2018, August 27, 2018, and was scheduled for a follow-up appointment in February 2019. *See* [Doc. Nos. 32-2 at 16–18, 24–25 and 32-4 at 1].

In response to the exhaustion issue, Mr. Christian appears to argue that the Court's refusal to consider exhaustion in May and Thompson's motion to dismiss somehow precludes them from raising the affirmative defense in a subsequent motion for summary judgment.[6] [Doc. No. 72 at 25–26]. He asserts that "[c]ontrary to defendants' affidavits, [he] exhausted all available administrative remedies required to satisfy OP-090124 ODOC Inmate/Offender Grievance Policy." *Id.* at 10. Additionally, Mr. Christian contends that it is not his "responsibility" to exhaust administrative remedies in order to be provided handrails in his cell, shower, or work area or to be allowed to move to a ground level cell. *Id.* at 14–15. Finally, he contends, without explanation, that "the defendants' refusal to participate in completing discovery create[s] a genuine issue of material fact."[7] [Doc. No. 72 at 10].

In reply, Thompson and May contend that they "are not barred from reasserting [the exhaustion] defense at the summary judgment stage," and that Mr. Christian erroneously relies on Rule 12(b)(6) standards in opposing their motion. [Doc. No. 73 at 1 n.1]. They contend that Mr. Christian did not comply with the grievance procedures and

---

[6] Mr. Christian mistakenly applies Rule 12(b)(6) standards in opposing the motion for summary judgment. *See* [Doc. No. 72 at 23].

[7] The Court notes that Judge Mitchell denied Mr. Christian's Motion to Compel Discovery [Doc. No. 64], concluding that the Court could not compel Defendants to produce documents outside their possession, custody, or control. *See* [Doc. No. 70 at 4]. However, Judge Mitchell acknowledged that Mr. Christian could subpoena the ODOC for the documents under Federal Rule of Civil Procedure 45. *See id.* It does not appear from the record that Mr. Christian followed through with a subpoena. In reply, Thompson and May contend that discovery closed without Mr. Christian requesting such documents, and that a response to a motion for summary judgment is not the proper vehicle to seek or develop additional discovery. *See* [Doc. No. 73 at 3 n.3].

fails to "provide any evidence to refute that he failed to correct procedural mistakes for certain grievance appeals." *Id.* at 2. They assert that the ODOC's grievance procedure must be used to "address any issue of 'condition of confinement'" and that "include[s] the handrails and cell assignment that [Mr. Christian] sought." *Id.* at 2–3. Therefore, they contend they are entitled to summary judgment on this basis. *Id.* at 3.

### E.    Judge Mitchell's R. & R.

Judge Mitchell begins her analysis with a description of ODOC's Inmate/Offender Grievance Process at OP-090124 [Doc. No. 31-9].[8] R. & R. at 8–10. Relying on the court-ordered Special Report and the records attached thereto, Judge Mitchell concluded that although Mr. Christian had filed several requests to staff and offender grievances, "his attempts to exhaust his administrative remedies were incomplete and ineffective because he either did not follow through with each step of the grievance procedure or failed to grieve the issues he alleges in his" Amended Complaint. R. & R. at 10; *see also* [Doc. Nos. 31 and 31-1 through 31-16]. Judge Mitchell concluded that Thompson and May had met their burden showing that Mr. Christian had failed to exhaust his administrative remedies, and that Mr. Christian offered no evidence to rebut this or to show that the administrative process was unavailable to him. R. & R. at 12–14.

Although Judge Mitchell opined that officials failed to respond promptly to Mr. Christian's requests to staff, she determined that ODOC's grievance policy provides a

---

[8] Judge Mitchell applied the October 18, 2017 version of the grievance policy, and no party, including Mr. Christian, objected to its use. *See* ODOC's Inmate/Offender Grievance Process at OP-090124, effective October 18, 2017 [Doc. No. 31-9]. Thus, the Court applies the same version.

remedy for such delays. *Id.* at 14. That is, "[i]f there has been no response in 30 days, but no later than 60 days, of submission, the inmate may file a grievance to the reviewing authority with a copy of the 'Request to Staff" attached to the grievance form." *Id.*; *see also* [Doc. No. 31-9 at 8]. Judge Mitchell concluded that Mr. Christian "never submitted a timely grievance to the facility's reviewing authority grieving the lack of response to his requests to staff." R. & R. at 15. Instead, he filed grievances with the Medical Administrative Review Authority ("MARA"), which Judge Mitchell concluded was "an improper step because appealing to the MARA is the final step of the grievance process." *Id.*; *see also* [Doc. Nos. 31-10 at 1; 31-11 at 1; 31-12 at 1]. Judge Mitchell specifically identified five MARA appeals at issue: MARA Nos. 17-68, 17-70, 17-96, 17-98, and 17-100.[9] R. & R. at 10–11; *see also* [Doc. Nos. 31-10, 31-11, 31-12, 31-13, and 31-14].

In rejecting Mr. Christian's claim that he need not exhaust remedies to obtain handrails or a ground-floor cell, Judge Mitchell explained that ODOC's grievance process applies to any condition of confinement that personally affects an inmate and for which a remedy may be available, including cell and bunk assignments and the lack of handrails. R. & R. at 15; *see also* [Doc. No. 31-9 at 3]. Accordingly, Judge Mitchell concluded that Mr. Christian's claims are barred for failure to exhaust under the PLRA, entitling

---

[9] Mr. Christian attached to his summary judgment response additional requests to staff, some submitted long after this action was initiated and others submitted well before. *See, e.g.*, [Doc. Nos. 72-12, 72-13, 72-14, 72-15, and 72-16]. He does not challenge Judge Mitchell's focus on the five MARA appeals at issue or argue that the additional materials are relevant to the exhaustion analysis. The record reflects that Mr. Christian's medical issues are longstanding, and he has been in custody since 2003.

Thompson and May to summary judgment and making it unnecessary to address their alternative arguments. R. & R. at 16.

### F.     Mr. Christian's Objections to the R. & R.

Mr. Christian's sole objection is that "May is the facility reviewing authority" and that "May chose not to respond to [his] grievances as required . . . therefore making any administrative remedy unavailable." Objections at 2. He does not challenge Judge Mitchell's explanation of the ODOC's grievance procedures, her description of his grievances, the grounds for their rejection, or the specific MARA appeals she identified as relevant. Mr. Christian also submits no evidence to undermine Judge Mitchell's determination that he failed to exhaust his administrative remedies.

## II.    LEGAL STANDARDS

### A.     28 U.S.C. § 636(b)(1) Standards

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The Court reviews de novo the objected-to portions of the R. & R. *See* 28 U.S.C. § 636(b)(1) ("A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

B.      **Summary Judgment Standards**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is material 'if under the substantive law it is essential to the proper disposition of the claim.'" *Savant Homes, Inc. v. Collins*, 809 F.3d 1133, 1137 (10th Cir. 2016) (quoting *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013)). "An issue is genuine 'if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way.'" *Id.* (quoting *Becker*, 709 F.3d at 1022). In applying this standard, the Court "view[s] the evidence and draw[s] all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).

C.      **Pro Se Litigant Standards**

Mr. Christian is proceeding pro se; thus, the Court must construe his pleadings "liberally" and hold them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), and *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, the Court may not "assume the role of advocate for the pro se litigant." *Id.* Nor should the Court "take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record" or "supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005);

11

*Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110).

### III.    ANALYSIS

#### A.    Exhaustion of Administrative Remedies under the PLRA

"In an effort to address the large number of prisoner complaints filed in federal court, Congress enacted" the PLRA. *Jones v. Bock*, 549 U.S. 199, 202 (2007). Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Thus, the PLRA, which places restrictions on a prisoner's ability to file an action, "requires prisoners to exhaust prison grievance procedures before filing suit." *Jones*, 549 U.S. at 202.

Exhaustion under the PLRA "is mandatory." *Woodford v. Ngo*, 548 U.S. 81, 85 (2006). A prisoner "must now exhaust administrative remedies even where the relief sought . . . cannot be granted by the administrative process." *Id.* Moreover, "exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983." *Id.*

Before the Supreme Court's ruling in *Jones*, the Tenth Circuit, along with other circuit and lower courts, adopted certain procedural rules that required a prisoner to allege and demonstrate exhaustion in their complaint. *See Jones*, 549 U.S. at 204–05 & n.2; *Purkey v. CCA Det. Ctr.*, 263 F. App'x 723, 725 (10th Cir. 2008) (unpublished) (citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204 (10th Cir. 2003) and *Ross v. Cnty.*

*of Bernalillo*, 365 F.3d 1181 (10th Cir. 2004), *both abrogated by Jones v. Bock*, 549 U.S. 199 (2007)). These rules also required a prisoner to "attach a copy of the applicable administrative dispositions to the complaint, or, in the absence of written documentation, describe with specificity the administrative proceeding and its outcome." *Aquilar-Avellaveda*, 478 F.3d at 1225 (citation omitted). Under these same rules, courts dismissed the entire action if the prisoner failed to exhaust as to any single claim in his complaint. *See Jones*, 549 U.S. at 206; *Purkey*, 263 F. App'x at 725.

In *Jones*, the Supreme Court held that the "failure to exhaust is an affirmative defense under the PLRA, and that inmates are not required to specially plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. It also concluded that "[o]nly" unexhausted (or "bad claims") in a complaint are dismissed rather than the entire complaint. *Id.* at 221. Thus, post-*Jones*, the Tenth Circuit has recognized that prisoners "no longer [have] the duty of pleading exhaustion . . . ." *Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007); *see also Aquilar-Avellaveda*, 478 F.3d at 1225. Rather, "the burden of proof for the exhaustion of administrative remedies in a suit governed by the PLRA lies with the defendant." *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007); *see also Freeman*, 479 F.3d at 1260 (concluding that "defendants now have the burden of asserting the failure to exhaust").

Once the defendant demonstrates that the plaintiff did not exhaust his administrative remedies, "the onus falls on the plaintiff to show that remedies were unavailable to him." *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (citation omitted). To that end, "the PLRA contains its own, textual exception to mandatory

13

exhaustion. Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632, 642 (2016). The Supreme Court in *Ross* identified three kinds of circumstances in which an administrative remedy, "although officially on the books," is unavailable: (1) when the administrative remedy "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use," i.e., "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643–44.

> **B.    Summary Judgment Evidence Establishes that Mr. Christian Failed to Timely Exhaust Administrative Remedies Available to Him**

A plaintiff exhausts administrative remedies "by properly following all of the steps laid out in the prison system's grievance procedure." *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010). "[T]he applicable procedural rules [that prisoners must exhaust] are defined not by the PLRA, but by the prison grievance process itself." *Jones*, 549 U.S. at 218 (citation omitted).

ODOC's Inmate/Offender Grievance Process at OP-090124 requires an initial, informal attempt to resolve a complaint by talking with appropriate staff within three days of the incident. [Doc. No. 31-9 at 6–7]. If the matter remains unresolved, the inmate

must then submit a written Request to Staff ("RTS") within seven days of the incident.[10]
*See id.* at 7.

Should the informal attempts at resolution fail, the inmate's next step is submission of the "Inmate/Offender Grievance Form" to the appropriate reviewing authority within 15 days of receipt of the response to the RTS.[11] *See id.* at 8–9. The inmate must attach to the grievance form a copy of the underlying RTS used in the informal resolution process and the response to same. *See id.* at 8. The grievance is submitted to the reviewing authority where the alleged incident occurred, which in the case of a medical grievance is the CHSA, who in this case is Defendant May. *See id.* at 9. The CHSA then has 20 days to answer the grievance. *See id.* at 10. If the grievance cannot be answered in 20 days, the inmate will be notified in writing, and the deadline will be extended no more than 20 additional days. *See id.* If the inmate receives no

---

[10] If there is no response to the RTS within 30 days of submission (but no later than 60 days), the inmate may file a grievance to the reviewing authority, attaching a copy of the RTS to the grievance form and asserting only the issue of the lack of response to the RTS. *See* [Doc. No. 31-9 at 8].

[11] Grievances that are an emergency or of a sensitive nature can be submitted directly to the appropriate reviewing authority without informal resolution. [Doc. No. 31-9 at 15–16]. An emergency grievance is one in which the inmate faces "irreparable harm or personal injury." *See id.* at 15. A sensitive grievance is one in which the inmate "alleges misconduct by a staff member who either directly supervises the inmate . . . or is the reviewing authority where the inmate . . . is assigned." *See id.* The inmate must describe why it is an emergency or sensitive grievance that justifies bypassing the normal procedures and attempts at informal resolution, and the "grievance must include a statement specifying the personal injury or irreparable harm at risk." *See id.* at 15–16.

response within 30 days (but no later than 60 days), the inmate may send the grievance to MARA with evidence of submitting the grievance to the CHSA. *See id.*

An unfavorable response to the grievance may then be appealed to MARA. *See id.* at 12. The final ruling by MARA concludes the administrative process available to the inmate through the ODOC. *See id.* at 14–15. The administrative process is exhausted after these steps have been completed.

If a grievance is denied by the CHSA and MARA as untimely, the inmate may request to submit a grievance out of time within 15 days of the date of denial of the untimely grievance or appeal. *See id.* at 19. The inmate will have to "prove by substantial evidence" that his failure to submit the grievance or appeal in a timely manner was not his fault. *See id.*

The evidence of record shows that Mr. Christian failed to timely exhaust the administrative remedies available to him. The Court addresses the five MARA appeals at issue below.

### 1)    *MARA 17-68 [Doc. No. 31-13] and MARA 17-70 [Doc. No. 31-14]*

These two appeals concern a cancellation of a December 7, 2015 medical appointment Christian had with OU Medical Center and Christian's request to be referred to a different outside medical provider. On August 2, 2016, Mr. Christian submitted a RTS to May, indicating that Dr. Griesman had referred him to a hip specialist at OU Medical Center and that the appointment was scheduled for December 7, 2015.[12] [Doc.

---

[12] Although not pointed out by the parties or the R. & R., Mr. Christian does not explain why he waited until August 2016 to inquire about a missed December 2015

No. 31-14 at 6]. Christian advised the appointment was canceled without explanation, and he requested to be referred to a different outside provider. *Id.* May responded on January 18, 2017, indicating that Christian was scheduled to discuss his request for an outside provider with Dr. Thompson and that OU Medical Center did not provide a reason for the cancellation. *Id.*

On September 15, 2017, despite having received May's response, Mr. Christian submitted a Misconduct/Grievance Appeal to MARA, asserting that there had been no response from the reviewing authority within 30 days. *Id.* at 2. On October 16, 2017, MARA returned the form unanswered because Mr. Christian used the wrong form and submitted the grievance out of time and after the allowed 60 days. *Id.* at 1. Here, Mr. Christian received a response to his RTS from May, albeit late. His proper recourse was to file a grievance with the reviewing authority within 30 days of having received no response to his RTS, but no later than 60 days.[13] *See* [Doc. No. 31-9 at 8]. Instead, he appealed straight to MARA with the wrong form and long after the 60 days, thereby skipping a step in the grievance process. His argument that "May is the facility reviewing authority" and her decision "not to respond to [his] grievances as required . . . [made] any administrative remedy unavailable" to him is not convincing for at least two reasons. Objections at 2. First, Christian did not follow proper procedure when he received no

---

medical appointment. Under the grievance policy, it appears he arguably should have filed a RTS with NFCF staff within seven days of the missed appointment. *See* [Doc. No. 31-9 at 7].

[13] This date would have fallen between September 1, 2016, and October 1, 2016.

response from May to his RTS initially filed in August 2016. Instead of filing a grievance with May, as the reviewing authority, before October 1, 2016, he appealed to MARA 11 months later in September 2017. Second, the ODOC's grievance policy arguably provided Christian with a remedy if he thought that May, as the reviewing authority, was exercising misconduct. He could have filed a "Sensitive Grievance." *See* [Doc. No. 31-9 at 15–16]. There is no evidence of record that Mr. Christian did so.

On December 14, 2016, Mr. Christian submitted a RTS to May, indicating that Dr. Griesman had referred him to a hip specialist at OU Medical Center and requesting to be referred to a different outside provider. [Doc. No. 31-13 at 5]. On January 13, 2017, Mr. Christian, having received no response to the RTS, filed an Inmate/Offender Grievance with May. *Id.* at 3. On September 15, 2017, Mr. Christian filed an Inmate/Offender Grievance with MARA on the basis that neither his RTS nor his grievance submitted to May, as the reviewing authority, received a response. *Id.* at 2. On October 16, 2017, MARA returned the grievance appeal unanswered because Mr. Christian submitted it out of time and after the allowed 60 days. *Id.* at 1.

The evidence shows that Mr. Christian waited 8 months after no response from the reviewing authority (CHSA Defendant May) to submit his grievance to MARA instead of the requisite 30 to 60 days required by ODOC's Inmate/Offender Grievance Process at OP-090124. *See* [Doc. No. 31-9 at 10]. He should have submitted his grievance between February 12, 2017, and March 14, 2017, as opposed to waiting until September 15, 2017.

The PLRA "requires proper exhaustion." *Thomas v. Parker*, 609 F.3d 1114, 1118 (10th Cir. 2010) (quoting *Woodford*, 548 U.S. at 93). "The benefits of exhaustion can be

18

realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules." *Id.* (quoting *Woodford*, 548 U.S. at 95).

### 2) *MARA 17-96 [Doc. No. 31-10], MARA 17-98 [Doc. No. 31-11], and MARA 17-100 [Doc. No. 31-12]*

These three appeals concern Mr. Christian's requests to staff for specially made Loveless-crafted shoes—one of the tertiary treatments prescribed by Dr. Griesman. On September 12, 2017, Mr. Christian submitted a RTS to May inquiring of the status and/or disposition of Dr. Griesman's diagnosis to provide Loveless shoes to address Mr. Christian's right foot inversion. [Doc. No. 31-10 at 3]. On October 17, 2017, Mr. Christian, having received no response to the RTS, filed an Inmate/Offender Grievance with MARA. *Id.* at 2. On November 20, 2017, MARA returned the grievance appeal unanswered because Mr. Christian submitted it to MARA instead of the required reviewing authority. *Id.* at 1. MARA indicated, however, that Christian could resubmit the grievance to the proper reviewing authority within 10 days, and that a failure to do so would result in Christian waiving or forfeiting the opportunity to proceed in the grievance process. *Id.* There is no evidence of record that Mr. Christian took any further action to complete the exhaustion of his administrative remedies with respect to this grievance. *See* Redpath's Aff. [Doc. No. 65-2].

On September 12, 2017, Mr. Christian submitted a RTS to May inquiring of the status and/or disposition of Referral Order No. 4461958. [Doc. No. 31-11 at 3]. On

October 17, 2017, Mr. Christian, having received no response to the RTS, filed an Inmate/Offender Grievance with MARA. *Id.* at 2. On November 20, 2017, MARA returned the grievance appeal unanswered because Mr. Christian submitted it to MARA instead of the reviewing authority required by policy. *Id.* at 1. MARA indicated, however, that Christian could resubmit the grievance to the proper reviewing authority within 10 days, and that a failure to do so would result in Christian waiving or forfeiting the opportunity to proceed in the grievance process. *Id.* There is no evidence of record that Mr. Christian took any further action to complete the exhaustion of his administrative remedies with respect to this grievance. *See* Redpath's Aff. [Doc. No. 65-2].

On September 12, 2017, Mr. Christian submitted a RTS to May requesting "written documentation of why shoes were refused." [Doc. No. 31-12 at 3]. On October 17, 2017, Mr. Christian, having received no response to the RTS, filed an Inmate/Offender Grievance with MARA. *Id.* at 2. On November 20, 2017, MARA returned the grievance appeal unanswered because Mr. Christian submitted it to MARA instead of the reviewing authority required by policy. *Id.* at 1. MARA indicated, however, that Christian could resubmit the grievance to the proper reviewing authority within 10 days, and that a failure to do so would result in Christian waiving or forfeiting the opportunity to proceed in the grievance process. *Id.* There is no evidence of record that Mr. Christian took any further action to complete the exhaustion of his administrative remedies with respect to this grievance. *See* Redpath's Aff. [Doc. No. 65-2].

The fact that May did not respond to Christian's three September 12, 2017 RTS concerning the specialty shoes did not absolve Christian of the exhaustion requirements.

His proper recourse was to file a grievance with May as the reviewing authority, not skip over her to MARA. And MARA gave him another opportunity to do so in November 2017, with respect to each grievance, and Christian chose not to. The Court concludes that May and Thompson have met their initial burden of demonstrating that no disputed material fact exists regarding their affirmative defense of failure to exhaust.

### C. No Genuine Issue of Material Fact Exists as to the Availability of Administrative Remedies

In the face of this evidence, Mr. Christian, as the nonmoving party, must "produce specific facts that show there is a genuine issue of fact" whether the administrative remedy operated as a dead end, the administrative process was opaque and incapable of use, or the prison staff interfered with his ability to use the procedures. *See May*, 929 F.3d at 1235; *see also Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011) (explaining that "[o]nce a defendant proves that a plaintiff failed to exhaust, however, the onus falls on the plaintiff to show that remedies were unavailable to him as a result of intimidation by prison officials").

Mr. Christian has not demonstrated that administrative remedies were unavailable to him. He never sought to proceed out of time, never sought a sensitive grievance alleging misconduct by May, or took MARA up on its offer of an additional 10 days to submit the grievance to the proper reviewing authority. Exhaustion is complete only when the grievance procedures are properly utilized, and the failure to complete the administrative exhaustion process is fatal. *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). Based on the record in this case, Mr. Christian has failed to demonstrate the

existence of a genuine issue of material fact with respect to the exhaustion of administrative remedies and summary judgment is proper. *Cf. May*, 929 F.3d at 1235 (concluding that "[b]ecause nothing in the record indicates that the administrative process was unavailable to [the plaintiff] . . . there is no genuine dispute of material fact as to the availability of administrative remedies" and summary judgment was proper).

Consequently, the Court dismisses the sole claim remaining in this action. *See Jernigan*, 304 F.3d at 1031 (affirming the district court's dismissal without prejudice of state inmate's § 1983 claim for failure to exhaust administrative remedies under the PLRA); *see also Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("Ordinarily, a dismissal based on a failure to exhaust administrative remedies should be *without prejudice*.").

## IV.    CONCLUSION

Having carefully and thoroughly considered this matter de novo, and for the reasons stated above, the Court:

(1)    ACCEPTS the Report and Recommendation [Doc. No. 74]; and

(2)    GRANTS Defendants B.J. Thompson and Shirley May's Motion for Summary Judgment [Doc. No. 65].

This results in the dismissal without prejudice of Mr. Christian's Eighth Amendment deliberate indifference claim against Thompson and May in their individual capacities for failure to exhaust administrative remedies as required by 42 U.S.C. § 1997e(a).

22

Because this Order disposes of all remaining claims against all remaining parties, a separate judgment will be entered in favor of Defendants in accordance with this Order and Judge Goodwin's prior dispositive order. *See* [Doc. No. 48].

IT IS SO ORDERED this 31st day of March 2026.

JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE

23